**119**

CHICAGO MEAT PROCESSORS,
INC., Plaintiff,

v.

MID-CENTURY INSURANCE CO. and
Truck Insurance Exchange,
Defendants.

No. 95 C 4277.

United States District Court,
N.D. Illinois,
Eastern Division.

April 21, 1997.

Glenn E. Heilizer, Laterza & Heilizer, Chicago, IL, for Plaintiff.

Stuart Brody, William J. Sneckenberg & Associates, Ltd., Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Chicago Meat Processors, Inc. ("Plaintiff") brings this action against Mid–Century Insurance Company and Truck Insurance Exchange (collectively referred to as "Defendants") for breach of contract, bad faith, and tortious interference in connection with Defendants' denial of Plaintiff's insurance claim for replenishment of spoiled meat inventory and related business losses. This matter is now before the Court on Plaintiff's Revised First Motion in Limine which seeks to bar Defendants from asserting at trial that Plaintiff misrepresented its prior loss history when applying for insurance. For the reasons discussed below, Plaintiff's motion is granted with respect to the claims for breach of contract and tortious interference with contract, which will be tried to a jury, and denied as premature with respect to the bad faith claim, which will be tried as a bench trial. only if Plaintiff prevails before the jury.

### I. BACKGROUND FACTS

On August 3, 1994, Defendants' insurance agent completed an application for insurance ("August 3 application"), which was signed by Plaintiff's president. The application contained an entry that requested the person

completing the form to "list all losses of the type covered by this insurance—if none, write none." No notation was made in that entry space. (Ins.App. p. 1). Insurance coverage was bound as of August 3, 1994. Several days later, Defendants' underwriting department requested "loss run" information for Plaintiff's prior insurance policy by the hold file date. (Pl.Rep. p. 1). On August 8, 1994, a handwritten note was faxed to Defendants (" August 8 fax") stating there had been no prior losses. M. A dispute exists as to who signed the note. Defendants never attached this August 8 fax to the insurance policy. *Id.* Defendants issued the policy and mailed it to Plaintiff on October 24, 1994 and the policy period ran from August 3, 1994, to August 3, 1995. (Pa. Rep. p. 1; Ins.App. p. 1). However. Plaintiffs meat inventory spoiled on October 10, 1994 and a claim was subsequently filed with the Defendant. (Comp. ¶¶ 7 & 11). Plaintiff's motion in limine seeks to bar the admissibility and reference to the August 8 fax.

## II.  ILLINOIS INSURANCE CODE, 215 ILCS 5/154

Plaintiff contends Illinois Insurance Code, 215 ILCS 5/154 ("Section 154"), as it existed before being amended effective June 1, 1996, bars Defendants from relying upon the August 8 fax to defeat the claim. The pre1996 version of Section 154 provides in relevant part:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor of which a copy is attached to or endorsed on the policy, and made a part thereof.

215 LCS 5/154 (1993). The final clause of this sentence was deleted by the 1996 amendment. P.A.413.

The purpose of Section 154 is to preclude an insurer from claiming misrepresentation of facts which occur "up to and at the time an application for insurance is executed." *International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.* 177 Ill.App.3d 555, 564, 126 Ill.Dec. 808, 814, 532 N.E.2d 493, 499 (1st Dist.1988). Section 154 is applicable only to the negotiation stage and not thereafter. *Inter–Insurance Exchange of Chicago Motor Club v. Milwaukee Mut. Ins. Co..* 61 Ill.App.3d 928, 931, 18 Ill.Dec. 927, 930, 378 N.E.2d 391, 394 (3d Dist.1978). The issue before the Court is whether Section 154 applies to the August 8 fax.

## III.  PLAINTIFF'S ALLEGED AUGUST 8, 1994 MISREPRESENTATION

The Court holds that the August 8 fax occurred during the negotiation for the insurance policy as contemplated by Section 154. Defendants requested Plaintiff to provide loss run information before the policy could issue. (Pl.Rep. p. 1). Defendants' insurance agent. James Mecha ("Mecha"), testified that the August 8 fax was sent because, at the time of Plaintiff's August 3 application, Mecha needed "something from [Plaintiff] showing prior coverage and no prior losses to send in with the application to the underwriter." (Mecha Dep. ¶ 28). Accordingly, the prior loss information contained in the August 8 fax was requested by Defendants in connection with the application for insurance. Section 154 required Defendants to incorporate the prior loss information into the policy in order to bar coverage on the basis of alleged misrepresentations contained in the August 8 fax.

This determination is consistent with the result reached in *Kafka v. Truck Insurance Exchange,* No. 90C5447, 1992 WL 159387, 1992 U.S. Dist. LEXIS 9440 (N.D.Ill. June 30, 1992), aff'd. 19 F.3d 383 (7th Cir.1994). In *Kafka,* the district court granted a motion in limine prohibiting Truck Insurance Exchange from introducing evidence concerning certain misrepresentations plaintiff made "in connection with his application for insurance." 1992 WL 159387 at *1, LEXIS at * 1–*3. The court ruled that Section 154 barred the admissibility of these misrepresentations because Truck Insurance Exchange did not attach a copy of the application to the policy. 1992 WL 159387 *2,

LEXIS at *3–*4. Similarly, Section 154 prevents Defendants from using the August 8 fax as a bar to coverage because the August 8 fax, made in connection with the August 3 application, was not attached to the policy.

The August 8 fax containing prior loss information comes within the negotiation for a policy of insurance because the prior loss information was necessary for the purpose of evaluating whether to issue the policy. *See International Amphitheatre*, 126 Ill.Dec. at 814, 532 N.E.2d at 499 (information regarding additional insureds required before coverage could be extended, and therefore, came within the negotiation of the policy) *Government Employees Insurance Co. v. Dennis*, 65 Ill.App.2d 365, 371, 65 Ill.App.2d 365, 367–368, 212 N.E.2d 759, 761–762 (2nd Dist. 1965).[1] Mecha testified that establishing no prior losses was "an absolute prerequisite for all policies issued by [Defendants]." (Mecha Dep. ¶ 29). According to Mecha's testimony, if the August 8 fax indicated prior losses, Defendants would not have issued a policy. *Id.*

■ Defendants argue that the August 8 fax should not be granted Section 154 protection because the subject policy became effective and was a legally binding insurance contract with coverage as of August 3, 1994. *Zannini v. Reliance Insurance*, 147 Ill.2d 437, 168 Ill.Dec. 820, 827, 590 N.E.2d 457, 464 (1992) (binder is a written instrument providing temporary insurance from the time an application is made until a policy is issued or declined.). According to Defendants, "once the binder and insurance contract are in place and effective, the parties are no longer 'negotiating' for insurance. The parties are then working within the framework of the insurance contract itself" (Defendants' March 21, 1997 Memorandum p. 2).

Although temporary insurance may have been in place as of August 3, 1994, the parties were still in the negotiation stage for insurance as of August 8,1994. Defendants requested Plaintiff to submit the prior loss information contained in the August 8 fax.

Again, Mecha testified that, in connection with the application, establishing no prior losses was "an absolute prerequisite" for all insurance policies issued by Defendants. (Mecha Dep. ¶¶ 28–29). Accordingly, the August 8 fax occurred during the negotiation for insurance because Defendants requested and used this information to determine whether to issue Plaintiff's policy or decline the risk. *See International Amphitheatre*, 126 Ill.Dec. at 814, 532 N.E.2d at 499.

Defendants cite *Carroll v. Preferred Risk Insurance Co..* 60 Ill.App.2d 170, 176–177, 60 Ill.App.2d 170, 208 N.E.2d 836, affd. 34 Ill.2d 310, 215 N.E.2d 801 (1966). for the proposition that the purpose of Section 154 is to preclude an insurer from charging misrepresentation of facts which occurred up to and at the time an application for insurance is executed. (Defendants' Response p. 2). *Carroll*, however, is distinguishable from the instant case. *Carroll* involved a traffic accident that occurred after an application was submitted but before the policy was issued. The court held that insurer "was within its rights" in refusing coverage because insured should have informed insurer of the intervening traffic accident. *Carroll*, 60 Ill. App.2d at 176–77, 208 N.E.2d at 839. However, the court found that Section 154 did not bear on the case before it. Section 154 does not apply to an intervening event that "come[s] to the knowledge of insured after an application is made but before a policy is issued." *Id.*

Unlike *Carroll*, here there is no intervening event which required Plaintiff to contact Defendants. The August 8 fax occurred during the negotiation for an insurance policy. Therefore, Defendants were required to meet all of the requirements of Section 154 in order to deny Plaintiff's claim on the basis of misrepresentations contained in the August 8 fax. Section 154 required Defendants to physically attach the August 8 fax to the application for insurance. Because Defendants failed to meet the statutory requirements of Section 154, Plaintiff's motion in

---

**1.** In *Dennis*, the court concluded that Chap. 73, Sec. 766, Ill. Rev. Stats. (1963) (predecessor to Section 154), has no application with respect to a questionnaire forwarded to insured after issu-ance of the policy and where the answers sought were not to induce insurer to issue the policy, but to prevent the cancellation thereof. *Dennis*, 212 N.E.2d at 761–762.

limine is granted with respect to the claims for breach of contract and tortious interference with contract which will be tried to the jury. The Court denies, as premature, the motion in limine with respect to the bad faith claim. In the event Plaintiff prevails at the jury trial, it is free to request the Court to further consider this issue prior to the hearing on its bad faith claim. In the event Defendants prevail before the jury, this issue becomes moot.

## IV. CONCLUSION

For the foregoing reasons, **Plaintiff's Revised First Motion In Limine is GRANTED with respect to the claim for breach of contract and tortious interference with contract, and denied as premature with respect to the bad faith claim.**